# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**MARSHA WILLIAMS**                                                                            **PLAINTIFF**

**V.**                           **NO. 4-05-CV-00961 GTE**

**AFFILIATED FOODS SOUTHWEST, INC.**                                     **DEFENDANT**

## ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

Before the Court is a Motion for Summary Judgment filed by Defendant Affiliated Foods Southwest, Inc. ("Affiliated") to which Plaintiff Marsha Williams ("Williams") has responded. Affiliated seeks judgment as a matter of law on Plaintiff's claims of discrimination based on her race (African-American), age (61) and disability. After reviewing the submissions of the parties and the record in its entirety, the Court concludes that the motion must be granted in part and denied in part. The motion is denied solely with respect to Plaintiff's claim that she was subjected to race and age discrimination when she was rejected for the nursing assistant position.

## OVERVIEW

Plaintiff Williams contends that her employer, Affiliated, refused to allow her to work in a light duty position, which she requested after being injured on the job and placed on light duty work restrictions by her physician. Plaintiff claims she was constructively terminated from employment with Affiliated on or about March 1, 2005. Plaintiff contends that sedentary positions were available within the company, but were not made available to her. Plaintiff contends that she was denied a sedentary position and terminated because of her disability, her age, and her race. Plaintiff also complains that she was denied a nursing assistant position and a communications position, allegedly because of her sex, race, or disability.

Plaintiff asserts claims pursuant to Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, and the Americans with Disabilities Act of 1990. Additionally, Plaintiff asserts the following two supplemental state law claims: (1) for violation of the Arkansas Civil Rights Act of 1993 for Affiliated's alleged failure to provide her with a reasonable accommodation and for terminating her employment on the basis of her disability; and (2) for terminating her because of disability in violation of the public policy of Arkansas.

**FACTS WITHOUT MATERIAL CONTROVERSY**

At this stage, the Court is required to construe the facts in a light most favorable to the Plaintiff.

In July of 2004, at the age of sixty-one (61) years old,[1] Plaintiff began working full-time for Affiliated Foods as an auditor in the warehouse.[2] The position was five days a week, from 8:00 to 4:30. The job was to scan labels on boxes and required Plaintiff to be on her feet, to bend, to stoop, and to lift boxes from negligible weight to seventy-five (75) pounds.

In January of 2005, Plaintiff applied for the position of assistant to the nurse. Plaintiff submitted her resume to Wayne Martin and Steve Wheetly. Mr. Wheetly is alleged to have commented that Plaintiff would probably get the job after reviewing her resume. Plaintiff studied nursing for three years in college, although she did not finish her degree. Plaintiff was never interviewed for the position. A younger, white female was selected to fill the position.

At some point in February 2005, Plaintiff also applied for a job opening in

---

[1] Plaintiff's date of birth is April 15, 1943.

[2] Plaintiff worked from 1981 to 1995 for the United Stated Postal Service. She retired from that job because of a disability due to harassment by a supervisor. Between 1995 and 2004, Plaintiff also worked various part-time jobs to supplement her disability income from the post office. Those jobs included working as a substitute school teacher, bank teller, and as a telemarketer for the telephone company.

communications.[3] That job was filled by a temporary worker who was a white female.

On February 16, 2005, Plaintiff suffered an on-the-job injury. While working that day, she fell and also injured herself lifting something. Plaintiff worked the entire day on February 16th and continued to work until she saw her personal physician, Dr. Miller, on February 23, 2005. Plaintiff complained to Dr. Miller about pain and numbness in her left leg. Dr. Miller referred Plaintiff to an orthopaedic, Dr. Collins. Plaintiff was seen by Dr. Collins on March 21, 2005.

On February 25, 2005, prior to seeing Dr. Collins, Plaintiff was seen by Dr. Scott Carle. Plaintiff was referred to Dr. Carle, Affiliated's doctor, by Affiliated's nurse after Plaintiff complained to her about health problems. Dr. Carle diagnosed Plaintiff with a sacrum strain and authorized her to return to work with the following restrictions: "Sedentary job class, up and about as tolerated." (Exh. 2 to Def.'s motion, Dr. Carle's notes).

Initially, Affiliated honored Dr. Carle's restrictions by placing Plaintiff in a clerical position that was a sedentary position. Plaintiff continued to work her same schedule and was paid the same rate of pay. Affiliated allowed Plaintiff to work in a light-duty position beginning on February 25th.

On February 28, 2005, Dr. Carle examined Plaintiff for the second time. Dr. Carle authorized Plaintiff to return to work with the following restrictions: no repetitive lifting over 20 lbs., no bending greater than 6 time per hour, and no pushing and/or pulling over 30 lbs. of force. (Exh. 3 to Def.'s motion, Dr. Carle's notes).

On Friday, March 3, 2005, Dr. Carle examined Plaintiff for the third time. Dr. Carle authorized Plaintiff to return to work with the following restrictions: no repetitive lifting over 35

---

[3] The record is unclear whether the position was permanent or temporary.

lbs., no bending greater than 6 times per hour, and no pushing and/or pulling over 40 lbs. of force. (Exh. 4 to Def.'s motion, Dr. Carle's notes). Although Plaintiff had been released for light work, she did not work that day because her blood pressure was up. After seeing Dr. Carle, she later went to see her personal physician to treat her high blood pressure.

Plaintiff also contends that on March 3rd, when she returned from her doctor's visit, she was called by her supervisor, Matthew Brestel, who took her to the director of personnel, Bob Southern. Mr. Southern advised Plaintiff that just because she was working in the office that she could not park in the handicapped parking spot, because it was for visitors only. Plaintiff contends that on this one occasion, she was also returned to the warehouse, where she was given her same job duties. (Pl.'s depo. at pp. 38). Plaintiff contends that she worked for three and one-half hours at this job. Plaintiff acknowledged, however, that the work she was given was within the restrictions established by Dr. Carle. (Pl.'s depo at p. 38-39).

On March 7, 2005, Dr. Carle examined Plaintiff for the fourth time. Dr. Carle authorized Plaintiff to return to work in a sedentary job class. (Exh. 5 to Def.'s motion, Dr. Carle's notes). Plaintiff testified in her deposition that when she reported to work with Dr. Carle's note for sedentary job restriction, she was told by Bob Southern that Affiliated did not have any light-duty work for her at that time and sent home. Plaintiff also stated that Sandra Davis, an assistant in the office, commented that those jobs were hard to find and that they would have to check on trying to find a job she could do. (Pl.'s depo. at pp. 41-42).

On March 11, 2005, Plaintiff received a call from Brenda Fleming, Affiliated's nurse, saying that there was a job for Plaintiff in accounting. Prior to reporting to work to start that job, however, Plaintiff first went to see Dr. Carle, for the fifth and final time. After this visit, during which Plaintiff states she was examined by a doctor other than Dr. Carle, Plaintiff was released

to return to regular duty. The accompanying medical note indicates that Dr. William Warren examined Plaintiff on this occasion. He indicated that Plaintiff could "return to regular duty on 3/11/2005" although he also included the following comment: "Needs to see PCP for further treatment and restrictions." (Pl.'s depo at pp. 42-43; Physician Report, Exh. 6 to Def.'s motion).

When Plaintiff returned to Affiliated with Dr. Warren's note, Brenda Fleming concluded, based on Dr. Warren's assessment, that it appeared Plaintiff could return to work on the floor. Plaintiff disagreed, stating that she was not physically able to return to her job on the floor, but she offered to perform any other available job. Plaintiff then reported the same thing to Wayne Martin. Plaintiff requested that she be allowed to perform the accounting job, but Affiliated refused. (Pl.'s depo. at 43-44).

Plaintiff then went home. Plaintiff requested medical leave, which Affiliated granted. There is no evidence in the record that Plaintiff ever provided Affiliated with any medical assessments of her condition and ability to work following the March 11th assessment clearing her to return to work.

On March 21, 2005, Plaintiff saw Dr. Collins for the first time. Dr. Collins advised that Plaintiff should remain off work until April 12, 2005. He noted that she was suffering with constant pain from morning to night. Dr. Collins scheduled a follow up appointment three weeks later to give him time to review the MRI. (Ex. 4 to Pl.'s response).

Plaintiff's second visit with Dr. Collins was on April 11, 2005. Dr. Collins indicated that Plaintiff had only been off work for a week as of April 11th. He directed that Plaintiff continue off work for another three weeks, at which time her ability to work would be further evaluated. (Ex. 2 to Pl.'s response).

On May 23, 2005, Dr. Collins saw Plaintiff for the third time. He concluded that Plaintiff

would not be able to handle working in the warehouse lifting things due to her back and he strongly recommended that she consider options other than the warehouse. (Exh. 3 to Pl.'s response).

On May 23, 2005, Plaintiff tendered her letter of resignation to Affiliated. Plaintiff testified in her deposition that she made the decision to quit because her doctors advised her that she would not be able to do warehouse work.

On January 20, 2006, Plaintiff was awarded disability benefits from the Social Security Administration. Plaintiff was found to be disabled based on "spondylolisthesis of the lumbar spine with radiculopathy and osteoarthritis of the cervical spine, knees and ankles." The SSA determined that Plaintiff's impairments prevented her "from performing work activity on a sustained basis at any exertional level." The SSA further agreed with Plaintiff's alleged onset date of disability as of March 7, 2005. (SSA decision, Exh. 7 to Def.'s motion).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Eighth Circuit set out the burdens of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point[] out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id*. at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)(brackets in original)).

As noted above, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. Rule 56(e). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

## DISCUSSION

The Court will consider separately the various claims asserted by Plaintiff.

### A. Failure to Hire Claims

Plaintiff claims that Affiliated unlawfully failed to hire her for a nursing assistant position and for a communication position, either because of her race or her age.[4] Both positions are discussed below.

To analyze Plaintiff's failure to hire claims, the Court must apply the familiar three-step burden shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). When a plaintiff establishes a prima facie case of discrimination, a legal presumption of discrimination arises. *Peterson v. Scott County*, 406 F.3d 515, 521 (8th Cir. 2005). A prima facie case of discrimination in a failure-to-hire context requires the Plaintiff to show that (1) she belongs to a protected class; (2) she applied and was qualified for a job for which the defendant was seeking applicants; (3) she was rejected; and (4) the Defendant sought applications from others. *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, 1196 (8th Cir. 2006)(omitting citation). The presumption created by a plaintiff's prima facie case requires a defendant to articulate a legitimate, nondiscriminatory reasons for its action, which the plaintiff may challenge by demonstrating that the defendant's proffered reason is in fact a mere pretext for discrimination. *Peterson,* 406 F.3d at 521.

**Nursing Position**

In January of 2005, Plaintiff submitted a resume for the nursing assistant position. Plaintiff claims that she spoke with Steve Wheetly about the job, that he reviewed her resume, and that he told her she would probably be able to get the job. Plaintiff surmised at her deposition that Mr. Wheetly indicated that the job would probably be hers because he "saw that I

---

[4] There appears to be no serious allegation that Plaintiff was denied these two positions because of her disability since she did not seek medical attention for her injury and discover her "disability" until February 23, 2005. .

- 8 -

was qualified for that job." (Pl.'s depo. at 72-73). Plaintiff heard nothing further about the position. A white female, Sandra Davis, was hired for the position.

Plaintiff attended college for three years (from 1961 to 1963) at the Tuskegee Institute in Alabama. Plaintiff testified in her deposition that she studied nursing before she "dropped out." Plaintiff has never worked as a nurse, although she has worked in a hospital before. (Pl.'s depo., p. 10).

There is no information in the record regarding the qualifications of Sandra Davis. And, for reasons unknown to the Court, Affiliated has elected not put forward any explanation of why it rejected Plaintiff for the position. Thus, the resolution of this claim turns on whether Plaintiff has established a prima facie case of discrimination. If so, the Court must reject Affiliated's motion for summary judgment.

Affiliated asserts that Plaintiff knows nothing about the duties of the nursing assistant position or the qualifications of the person hired for the position. However, Plaintiff has countered that argument with the assertion that she visited with the Plant Manager, Mr. Wheetly, about the position, that he read her resume, and that he told her that she would probably get the position. At trial, Plaintiff will be entitled to present the alleged statements of Mr. Wheetly. His statements, combined with Plaintiff's three years of college nursing studies, are sufficient to show that she was qualified for the nursing assistant position in the absence of any job specifications required for the vacancy.

The Court concludes that Plaintiff has established a prima facie case of discrimination. In reaching this conclusion, the Court is mindful of the Supreme Court's admonition that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Given Affiliated's decision not to offer any

evidence as to why it refused Plaintiff's application to serve as the nursing assistant, the presumption of discrimination created by the prima facie case remains and on the present record defeats summary judgment.[5]

**Communication Position**

In February of 2005, Plaintiff claims that she submitted a resume for a communication position. Plaintiff stated that the position was vacant because one of the employees was out on medical leave. During her deposition, Plaintiff admitted that she did not know whether Affiliated intended to permanently fill this position. A white female from a temporary agency was selected to fill this position.

Plaintiff supports this claim solely by asserting that there was a job in communications and that it was filled by a temporary worker who was a white female. (Pl.'s Stmt. of Mat. Facts, at ¶ 8). There is no evidence to show that this was a permanent, as opposed to temporary position, what the job duties entailed, and whether Plaintiff was qualified to perform such duties. In the absence of any such evidence, the Court holds that Plaintiff failed to establish a prima facie case of discrimination in connection with the communication position. That claim will be dismissed.

**B.    Disability Discrimination**

---

[5] For now, the Court will allow Plaintiff to present both her race and age discrimination theories. However, the Court notes that Plaintiff's age discrimination theory may be undercut by the fact that Affiliated hired her at the age of 61. "There is a strong inference that discrimination was not a motivating factor if the same person hired and fired the plaintiff within a relatively short period of time." *Herr v. Airborne Freight Corp.,* 130 F.3d 359, 362 (8th Cir.1997); *see also Lowe v. J.B. Hunt Transp.,* 963 F.2d 173, 174-75 (8th Cir.1992) (holding in an age discrimination case that "[i]t is simply incredible, in light of the weakness of plaintiff's evidence otherwise, that company officials who hired him at age fifty-one had suddenly developed an aversion to older people less than two years later."). The Court notes that the record is unclear on whether the same person made the decision to hire Plaintiff initially and to reject her application for the nursing assistant position.

As a preliminary matter, the Court rejects as a matter of law Plaintiff's assertion that she was constructively discharged by Affiliated. An employee is constructively discharged when working conditions are made so objectively intolerable that she is forced to quit. *Jackson v. Ark. Dep't of Educ., Vocational, & Technical Educ.,* 272 F.3d 1020, 1026 (8th Cir.2001), *cert. denied,* --- U.S. ----, 122 S.Ct. 2366, 153 L.Ed.2d 186 (2002). To be liable, an employer must have intended or at least reasonably foreseen that the employee would quit as a result of the unlawful working conditions it created, and the employee must have given it a reasonable opportunity to fix the problem. *Id.* at 1026-27. The evidence does not rise to this level. Instead, the evidence allows only one conclusion: Plaintiff voluntarily resigned her employment on May 23, 2005. Thus, this is not a termination case.

To prevail on her claims pursuant to the Americans with Disabilities Act ("ADA") and the Arkansas Civil Rights Act, Plaintiff must demonstrate as part of her prima facie case that: (1) her condition qualifies as a disability; (2) she is qualified to perform the essential functions of her position with or without reasonable accommodation;[6] and (3) she suffered an adverse employment action due to her disability. *Spangler v. Fed. Home Loan Bank of Des Moines*, 278 F.3d 847, 850 (8th Cir. 2002); *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002)(disability claims under the Arkansas Civil Rights Act analyzed using the same principles employed in analyzing claims under the ADA).

The Court concludes that Plaintiff has failed to establish a prima facie case of disability

---

[6] The fact that a plaintiff prevails on a claim for total disability under the Social Security Act does not necessarily preclude the plaintiff from also prevailing on an ADA claim for failure to accommodate. *See Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999)(employee entitled to explain any discrepancies between allegations of total disability to SSA and ADA claim of ability to perform essential job functions). Thus, the Court may not grant summary judgment based on the fact that Plaintiff sought and was granted disability benefits from the Social Security Administration, which concluded that Plaintiff was disabled since March 7, 2005.

discrimination. Plaintiff has failed to come forward with any evidence to permit a finding that Affiliated subjected her to any adverse employment action as a result of her disability.[7] The undisputed evidence shows that Affiliated accommodated her injuries by either allowing her to perform sedentary job duties or by otherwise providing her with work it believed to be within her restrictions.

The crux of Plaintiff's disability related claims turn on her allegation that Affiliated withdrew the light duty job in accounting after she was released to full duty on March 11, 2005. Plaintiff alleges that she told Ms. Fleming at the time that she was not physically able to perform her warehouse job. Ms. Fleming also had before her Dr. Warren's release of Plaintiff to regular duties. (*See* Def.'s Exh. 6). Thus, in order to find in Plaintiff's favor, the Court would have to find that Affiliated was not entitled to rely on the March 11, 2005, physician's opinion regarding Plaintiff's ability to perform her regular job duties. The Court cannot so find. Assuming that the doctor was wrong in releasing Plaintiff from any restrictions, that does not mean that Affiliated may be held liable under the ADA for relying upon the doctor's assessment of Plaintiff's abilities.

It appears that Affiliated attempted to accommodate Plaintiff's work restrictions until March 11, the point at which a doctor released her to go back to work. There is no evidence that Plaintiff ever requested any reasonable accommodation from Affiliated after March 11, 2005.

---

[7] The Court notes that Plaintiff's allegation that she was not permitted to park in a handicapped parking spot reserved for visitors does not rise to the level of an adverse employment action. *See, e.g., Tilde v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997)(adverse employment action must rise to the level of an ultimate employment decision such as termination, demotion, or suspension); *Gagnon v. Sprint Corp.*, 284 F.3d 839, 850 (8th Cir. 2002)("it is well settled in this circuit that ostracism and rudeness by supervisors and co-workers do not rise to the level of an adverse employment action"); *Susa v. Nestle U.S.C. Co.*, 181 F.3d 958, 967 (8th Cir. 1999)(Title VII is "not designed to create a remedy for all offensive language and conduct in the workplace . . .").

Plaintiff has tendered information from Dr. Collins dated March 21, April 11, and May 23 of 2005. The information supports her claim that she could not perform her job duties. However, there is no evidence that she provided such information to Affiliated to controvert the May 11th finding that she was able to perform her job duties. Nor is it clear that if she had done so, the accounting position would have still have been available.

Plaintiff argues, and the Court accepts, that there was no way for her job in the warehouse to be modified, because it required her to stand continuously, to stoop and to bend. (Pl.'s depo. at p. 39). Thus, Plaintiff's ADA claim is necessarily based on the theory that Affiliated failed to reasonably accommodate her desire to maintain her employment by assigning her to a sedentary position. Plaintiff argues that there was such a position in accounting.

For purposes of the present motion, the Court accepts that on March 11th, there was an available position that Plaintiff could have performed in accounting. The issue is whether Affiliated failed to reasonably accommodate Plaintiff when it refused to allow her to work in that position. The answer is no. While reassignment to a vacant position can be a possible accommodation under the ADA, reassignment is an accommodation of "last resort." *Cravens v. Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011, 1018 (8th Cir. 2000). Affiliated was not required to create a new position for Plaintiff or to bump another employee to make room for Plaintiff. *Id*.

The Court understands that Plaintiff would have preferred a sedentary position rather than the warehouse position for which she was hired. However, she has failed to come forward with any facts that would have imposed upon Affiliated any duty of accommodation. An employer is not required to accommodate an employee unless and until it is clear that the employee is unable due to "disability" to perform the essential job duties of the job for which she was hired. Here,

Plaintiff failed to present Affiliated with medical documentation that she could not perform her duties in the warehouse after she was released to return to the position on March 11th. The Court understands that subsequent physicians disagreed with the March 11th assessment of Plaintiff's physical condition and found Plaintiff unable to perform her job duties. Plaintiff failed to communicate these assessments to Affiliated, however, and such knowledge may not be imputed to Affiliated. Thus, in determining that Plaintiff has failed to demonstrate a prima facie case of disability discrimination, the Court need not even reach the issue of whether Affiliated was required to reassign Plaintiff to a sedentary or light-duty accounting position. Affiliated, when confronted with contradictory statements – Plaintiff's assertion that she could not perform her job duties and a physician's assessment that she could – allowed Plaintiff to be placed on medical leave. Such conduct does not violate the laws designed to protect individuals from being discriminated against because of their disability and no reasonable jury could so find.

Plaintiff's claims pursuant to the ADA and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-207, must be dismissed.

## CONCLUSION

For the reasons herein stated,

IT IS HEREBY ORDERED THAT Defendant's Motion for Summary Judgment (Docket No. 16) be, and it is hereby, GRANTED IN PART AND DENIED IN PART. All of Plaintiff's theories for relief based on disability discrimination and Affiliated's failure to hire her for the communication position are dismissed with prejudice. Plaintiff may proceed to trial solely on her legal theories associated with Affiliated's failure to hire her for the nursing assistant position.

IT IS SO ORDERED this   23rd   day of April, 2007.

/s/Garnett Thomas Eisele
UNITED STATES DISTRICT COURT